**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**CRISSY MONIQUE BAKER,**<br><br>**Defendant.** | **Crim. Case No. 25-172-SLS** |

## <u>UNITED STATES' MEMORANDUM IN AID OF SENTENCING</u>

For more than two years, Crissy Monique Baker defrauded the federal government and American taxpayers out of nearly a quarter-million dollars. Despite earning more than $100,000 as a full-time U.S. Department of Housing and Urban Development employee, Baker simultaneously secured full-time government contractor positions working for AmeriCorps and NIH. As a result, she claimed to work as many as 26 hours on certain days. She successfully concealed her scheme by exploiting the government's then-telework policy. Through her criminal conduct, the U.S. government suffered a loss of approximately $225,000. Although Baker confessed her conduct to the government, quickly pled guilty once she learned of the investigation, and appears genuinely remorseful, a period of imprisonment is warranted to deter others from engaging in similar conduct. Consistent with the sentences authorized by the U.S. Sentencing Guidelines and considering her military service and parenting responsibilities, the United States requests that the Court sentence Baker to one month in prison followed by three years of supervised release with the first seven months to be served on home detention. The government also requests that the Court order her to pay $225,866.99 in restitution. Such a sentence would be sufficient but not greater than necessary to achieve the purposes of sentencing.

## I.     Background

Like most defendants who appear in this courthouse, Baker grew up in difficult circumstances. *See* PSR ¶ 50-54.[1]  She persevered, however, ultimately joining the U.S. Army Reserves, where she has served our nation for more than 25 years including during Operation Enduring Freedom, the military campaign that followed the September 11th terrorist attacks.  PSR ¶ 78.  Because of the instant offense, her security clearance has been revoked and her military retirement is pending.  *Id*.  Ms. Baker has a college degree, which she earned in 2007.  PSR ¶ 75. She also is a single mom raising a minor daughter. PSR ¶ 59.

Between October 2021 and May 2025, Baker was a full-time federal employee with the U.S. Department of Housing and Urban Development, serving as a Program Analyst.  PSR ¶ 15. Before resigning from that position, she earned $132,000 per year.  PSR ¶ 80.

Despite earning a six-figure salary, she sought additional money by securing other full-time work for the federal government.  Specifically, between September 2021 and April 2023, a federal contractor employed Baker to perform full-time work as a Human Resources Assistant for AmeriCorps.  PSR ¶ 17.  Eight months after she secured that job, she got hired by another federal contractor to work full-time as a Human Resources Specialist for NIH; she was terminated in December 2022.  *See* PSR ¶ 18.  Baker also separately worked as a contractor for the Pension Benefit Guaranty Corporation from late 2023 to May 2025 and as a contractor for the Department of Homeland Security – Transportation Safety Administration from approximately August 2023 through May 2025.

As a result of being employed full-time by HUD and by at least two federal contractors, Baker falsely claimed to work more hours for the federal government than she actually did, and

---

[1] References to the PSR or Presentence Report are to the initial PSR and not the final one, which is not yet available.  *See* ECF No. 13.

on certain occasions, more hours than was even humanly possible. PSR ¶ 19. For example, in June 2022, her combined hours totaled more than 24 hours in a single day on 13 separate occasions as detailed in the below chart. PSR ¶ 20.

| Date | | | 6/1/22 | 6/2/22 | 6/3/22 |
|---|---|---|---|---|---|
| Day | Mon. | Tue. | Wed. | Thur. | Fri. |
| HUD | | | 10 | 10 | |
| Contractor-A *(performing work for AmeriCorps)* | | | 8 | 8 | 8 |
| Contractor-B *(performing work for NIH)* | | | 8 | 8 | 8 |
| **Total Hours Per Day** | | | **26** | **26** | **16** |
| | | | | | |
| Date | 6/6/22 | 6/7/22 | 6/8/22 | 6/9/22 | 6/10/22 |
| Day | Mon. | Tue. | Wed. | Thur. | Fri. |
| HUD | 10 | 10 | 10 | 5 | |
| Contractor-A *(performing work for AmeriCorps)* | 8 | 8 | 8 | 5 | 8 |
| Contractor-B *(performing work for NIH)* | 8 | 8 | 8 | 5 | 8 |
| **Total Hours Per Day** | **26** | **26** | **26** | **15** | **16** |
| | | | | | |
| Date | 6/13/22 | 6/14/22 | 6/15/22 | 6/16/22 | 6/17/22 |
| Day | Mon. | Tue. | Wed. | Thur. | Fri. |
| HUD | 10 | 10 | 10 | 10 | |
| Contractor-A *(performing work for AmeriCorps)* | 8 | 8 | | 8 | 8 |
| Contractor-B *(performing work for NIH)* | 8 | 8 | | 8 | 8 |
| **Total Hours Per Day** | **26** | **26** | **10** | **26** | **16** |
| | | | | | |
| Date | 6/20/22 | 6/21/22 | 6/22/22 | 6/23/22 | 6/24/22 |
| Day | Mon. | Tue. | Wed. | Thur. | Fri. |
| HUD | | 10 | 10 | 4 | |
| Contractor-A *(performing work for AmeriCorps)* | | 8 | 8 | | 8 |
| Contractor-B *(performing work for NIH)* | | 8 | 8 | | 8 |
| **Total Hours Per Day** | | **26** | **26** | **4** | **16** |
| | | | | | |
| Date | 6/27/22 | 6/28/22 | 6/29/22 | 6/30/22 | |
| Day | Mon. | Tue. | Wed. | Thur. | |
| HUD | 10 | 10 | 10 | 10 | |
| Contractor-A *(performing work for AmeriCorps)* | 8 | 8 | 8 | | |
| Contractor-B *(performing work for NIH)* | 8 | 8 | 8 | 8 | |
| **Total Hours Per Day** | **26** | **26** | **26** | **18** | |

As a result of her criminal conduct, which she facilitated through teleworking, Baker caused the government to lose more than $225,000. PSR ¶ 26.

## II.    Sentencing Guidelines

The parties and the presentence investigation report writer agree that the following guidelines apply.

| | | |
|---|---|---|
| USSG § 2B1.1(a)(2) | Base Offense Level | 6 |
| USSG § 2B1.1(b)(1)(F) | Loss Amount: More than $150,000 | 10 |
| USSG § 3E1.1 | Acceptance of Responsibility | -3 |
| USSG § 4C1.1 | Zero-Point Offender Adjustment | -2 |

PSR ¶ 31-41.  Baker is in Criminal History Category I. PSR ¶ 44.  Based on a total offense level of 11 and CHC I, the guidelines recommend a sentence of 8 to 14 months' imprisonment and a fine of $4,000 to $40,000.  PSR ¶ 89, 107.  Because the recommended imprisonment range falls within Zone B of the Sentencing Table, the Guidelines provide that the minimum term may be satisfied in a variety of ways, including: (1) a sentence of pure imprisonment, (2) a one-month prison sentence followed by a term of supervised release with seven months of home detention, and (3) a probationary sentence that includes eight months of home detention. See PSR ¶ 90, USSG §5C1.1(e).  The Guidelines note that a non-prison sentence is generally appropriate for defendants who are in Zone B of the Sentencing Table if, like Baker, they received a zero-point offender adjustment.  PSR ¶ 91. USSG §5C1.1, comment. (n.10).

## III.    The 18 U.S.C. § 3553(a) Factors

The Court must impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational treatment.  18 U.S.C. § 3553(a)(2).  The Court also must consider the history and characteristics of the defendant, the kinds of sentences available, the sentencing range under the guidelines, any relevant policy statements, the need to avoid

unwarranted sentencing disparities, and the need to provide restitution to the victims. 18 U.S.C. § 3553(a)(1)-(7).

The section 3553(a) factors support a sentence that consists of a one-month term of incarceration followed by seven months of home detention.

### A. The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense

Baker's scheme was serious. Her conduct resulted in the United States government suffering a loss of nearly a quarter-million dollars. As a federal government employee, she was trusted both to work the hours that she said she did and to telework in an honest manner. Instead, she chose to exploit the flexibility of telework, and in the process, unfairly maligned millions of federal workers who did not abuse that privilege. Her fraud scheme also was not a one-time, two-time, or three-time mistake. She engaged in the scheme over the course of multiple years and certified working hours she did not work over and over again through countless billing cycles during that time period. Accordingly, the nature and circumstances of her offense and need for the sentence to reflect the offense's seriousness weigh in favor of incarceration.

### B. The Need to Promote Respect for the Law and to Deter the Defendant and Others from This Type of Criminal Conduct

Although the government hopes that Baker has been specifically deterred from engaging in additional criminal conduct by becoming a felon, even if that is indeed the case, the Court's sentence must still promote respect for the law and deter the public from engaging in similar criminal conduct. Accordingly, this factor also weighs in favor of a sentence of incarceration to make it clear to people, specifically those who either work for the federal government directly or as contractors and whose salaries are funded by taxpayer dollars, that billing for hours not worked year after year will result in significant penalties, including incarceration.

### C.  The History and Circumstances of the Defendant

Baker's history and circumstances are complicated.  Unfortunately, she had a challenging upbringing.  She overcame multiple obstacles to become a productive member of society, which has included more than 25 years of service in the U.S. Army Reserves.  She is a single mother to a pre-teen daughter.  Prior to the instant case, she had no criminal history.  To her credit, once she realized she was under federal investigation, she agreed to be interviewed by the government, confessed to her conduct, and entered a quick guilty plea, though on terms that were more favorable to her than she would have received but for her interview.  Thus, most of Baker's history and circumstances counsel in favor of a purely probationary sentence consistent with the Guidelines' recommendation that a non-prison sentence is generally appropriate for zero-point offenders who are in Zone B of the Sentencing Table. *See* PSR ¶ 91. USSG §5C1.1, comment. (n.10).  However, the conduct at issue here — exploiting telework to fraudulently earn money for hours that were not worked and engaging in such conduct for well over a year — and the fact that Baker was a federal employee and contractor depriving taxpayers of fair value for the services she actually rendered warrants some period of incarceration.

### D.  Unwarranted Sentencing Disparities

According to the U.S. Sentencing Commission's Judiciary Sentencing Information, "During the last five fiscal years (FY2020-2024), there were 493 defendants whose primary guideline was §2B1.1, with a Final Offense Level of 11 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure." PSR ¶ 114.  Forty-eight percent of those defendants received a prison sentence with the average length being 5 months with a median sentence of 1 month.  Moreover, when considering all 493 defendants, the average sentence imposed was 5 months while the median sentence was 3 months.  PSR ¶ 114.

Based on those statistics, a one-month prison sentence followed by three years of supervised release with the first seven months being served on home detention would not lead to an unwarranted sentencing disparity. This is further supported by the following table, which summarizes the sentences that four defendants who engaged in similar behavior received. Although three of the four sentences referenced below were probationary, the conduct at issue in those cases was less egregious than Baker's.

| Defendant & Sentence Imposed | Offense of Conviction / Factual Summary |
|---|---|
| **Daniel Glauber, 16-CR-77-RJL (D.D.C.)** **Five Years of Probation** | False Statements (18 U.S.C. § 1001) Defendant simultaneously worked at OPM and NSA from May 2012 through August 2012, but neither agency was aware that he worked at the other. After reviewing building access reports and timesheets, OPM determined that he was paid $43,706.25 for 323.75 hours that he falsely said he worked between May 2012 and August 2012. NSA's review of building access records and timesheets established that he falsely claimed to work 269.50 hours between May 2012 and August 2013, resulting in him being paid $26,940 for unworked hours. As a result, he defrauded the United States out of approximately $70,646. |
| **Idris Ahmad, 2022-CF2-5279 (D.C. Sup. Ct.)** **18 Months of Probation** | Two Counts of Second-Degree Theft Two Counts of Second-Degree Fraud Defendant submitted fraudulent timesheets to the D.C. Department of Health and United States Department of Defense reporting identical shifts for both employers. He fraudulently obtained $42,000 in unearned wages between approximately Sept. 2020 and June 2021. |

| Defendant & Sentence Imposed | Offense of Conviction / Factual Summary |
|---|---|
| **Lynette Jackson, 14-CR-202 (D. Md.)**<br>**Three Years of Probation** | False Claims (18 U.S.C. § 287)<br><br>Between approximately September 2010 and June 2011, the defendant was employed by two separate DOD federal contractors and claimed to work more than 680 hours that she did not work, causing a loss to the government of $65,264.55. |
| **Jeffery K. Armstrong, 11-CR-304 (E.D. Va.)**<br>**18 Months of Imprisonment followed by**<br>**Three Years of Supervised Release** | Nine Counts of Wire Fraud<br>(18 USC 1343)<br><br>Defendant was convicted after a trial of nine counts related to receiving more than $100,000 in salary payments from the United Nations and the National Labor Relations Board. He was employed by both entities at the same time between April 2009 and September 2009 and concealed his concurrent employment. His final guidelines range was 24 to 30 months. The Court sentenced him to 18 months after considering his background, lack of criminal record, and military service including working at Ground Zero. |

Here, Ms. Baker's fraud caused a loss to the government far exceeding the financial harm caused in each of the above cases, including the Armstrong case, where a defendant who also served in the U.S. military received an 18-month sentence.  Accordingly, a one-month prison sentence followed by three years of supervised release with the first seven months to be served on home detention would not result in an unwarranted sentencing disparity.

## IV.    Restitution

The government requests that the Court order Baker to pay restitution in the total amount of $225,866.99.

## **CONCLUSION**

The United States requests that the Court sentence Chrissy Monique Baker to one month of imprisonment followed by three years of supervised release with the first seven months being served on home detention and order restitution in the amount of $225,866.99.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:      _/s/ Kondi J. Kleinman & Will Hart_
Will Hart, D.C. Bar No. 1029325
Kondi J. Kleinman, Cal. Bar No. 241277
Assistant United States Attorneys
Fraud, Public Corruption & Civil Rights Section
601 D Street, N.W. | Washington, D.C. 20530
(202) 252-7877 | william.hart@usdoj.gov
(202) 252-6887 | kondi.kleinman2@usdoj.gov